UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

TONY MAYS, SR.,

        Plaintiff,

   v.                                    CAUSE NO. 3:21-CV-287-DRL-MGG

BRAGGS,

        Defendant.

## OPINION AND ORDER

Tony Mays, Sr., a prisoner without a lawyer, was granted leave to proceed on a claim that his caseworker at Westville Correctional Facility, Nikita Jewell-Brabbs,[1] failed to protect him from being attacked by his cellmate. He claims that his cellmate told her that he would stab Mr. Mays if he was not moved; he was not moved and on May 20, 2020, carried through on his threat, stabbing and severely injuring Mr. Mays. Ms. Jewell-Brabbs now moves for summary judgment on the ground that Mr. Mays did not exhaust his administrative remedies before filing suit as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e. (ECF 25.) Mr. Mays has filed a response to oppose the motion (ECF 31), and the time has expired for Ms. Jewell-Brabbs to file a reply. The matter is now ripe for adjudication.

Under Federal Rule of Civil Procedure 56, the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and

---

[1] Mr. Mays misidentified her as "Mrs. Braggs" in his complaint. The court uses her correct name in this opinion.

the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In deciding whether a genuine dispute of material fact exists, the court must "consider all of the evidence in the record in the light most favorable to the non-moving party, and . . . draw all reasonable inferences from that evidence" in that party's favor. *Dunn v. Menard, Inc.*, 880 F.3d 899, 905 (7th Cir. 2018) (citation omitted). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in her own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). "[I]nferences relying on mere speculation or conjecture will not suffice." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner. . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Lack of exhaustion is an affirmative defense that the defendant has the burden of pleading and proving. *Jones v. Bock*, 549 U.S. 199, 216 (2007). The purpose of the exhaustion requirement is "to give the prison an opportunity to address the problem *before* burdensome litigation is filed." *Chambers v. Sood*, 956 F.3d 979, 983 (7th Cir. 2020) (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). The law takes a "strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). "To exhaust remedies, a prisoner must file

2

complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id*. at 1024. The exhaustion requirement is mandatory, and the court lacks the discretion to excuse a prisoner from exhausting. *Ross v. Blake*, 578 U.S. 632, 639 (2016).

Nevertheless, inmates are only required to exhaust administrative remedies that are actually available. *Woodford*, 548 U.S. at 102. The availability of a remedy is not a matter of what appears on paper, but rather whether the process was in actuality available for the prisoner to pursue. *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Thus, when prison staff hinder an inmate's ability to use the administrative process, such as by failing to provide him with the necessary forms, administrative remedies are not considered "available." *Id.* In essence, "[p]rison officials may not take unfair advantage of the exhaustion requirement," and a remedy will be deemed unavailable if prison staff "use affirmative misconduct to prevent a prisoner from exhausting." *Dole*, 438 F.3d at 809.

At all relevant times, Westville had a grievance policy in place that allows inmates to grieve a variety of matters, including the actions of staff or other concerns related to the conditions of their confinement. Inmates are made aware of the policy upon their arrival at Westville, and the policy is also available in the prison law library. (ECF 25-1 ¶¶ 1-25.) The process consists of three steps: (1) a formal grievance; (2) a written appeal to the Warden or his designee; and (3) a written appeal to the Indiana Department of Correction Grievance Manager. The process begins with the inmate submitting a formal

grievance no later than 10 business days from the date of the incident giving rise to the complaint or concern. If the inmate is dissatisfied with the response to his grievance, he may initiate an appeal within five business days. (ECF 25-2 at 3, 9, 12-13.)

Official grievance records reflect that Mr. Mays was familiar with the grievance policy and that he filed several formal grievances during his incarceration, including before the events giving rise to this lawsuit. (ECF 25-3.) As pertains this case, he filed a grievance dated June 22, 2020, which was received by the grievance office on August 10, 2020, complaining that Ms. Jewell-Brabbs had been made aware that his cellmate posed a threat to him but did nothing to protect him. (*Id.* at 3.) On August 11, 2020, the grievance specialist responded to the grievance, informing Mr. Mays that it was not timely filed in accordance with the grievance policy. (*Id.* at 2.) There is no indication from grievance records that Mr. Mays completed the second and third steps by pursuing an appeal through the Warden and the IDOC Grievance Manager.

In response to the motion, Mr. Mays argues that the untimeliness of his grievance should be excused because he was incapacitated due to the attack. He is correct that a grievance process is not considered available "to a person physically unable to pursue it." *Lanaghan v. Koch*, 902 F.3d 683, 689 (7th Cir. 2018). If an inmate is incapacitated during part or all of the grievance period, he must nevertheless file a grievance "as soon as it was reasonably possible for him to do so." *Hurst v. Hantke*, 634 F.3d 409, 412 (7th Cir. 2011). In his response, Mr. Mays offers varying descriptions of the amount of time he was in the infirmary after the attack (during which the court will presume he was incapacitated), at one point stating that it was 15 days and at another that it was "about three weeks."

4

Regardless, the record reflects that as of June 6, 2020, he was capable of completing a written grievance, as he filed a written "request for interview" form on that date with the Deputy Warden complaining that Ms. Jewell-Brabbs hadn't done anything to separate him and his cellmate. He also expressed the view that he never should have been housed with this inmate in the first place. (ECF 2-1 at 1.) The Deputy Warden responded to him on June 10, 2020, stating that staff had been unaware of any threat to his safety prior to the attack and that policy had been followed as to his cell assignment. (*Id.*) If Mr. Mays was capable of filing a request for interview form on June 6, 2020, there was no reason he could not have initiated the formal grievance process on that date.

Mr. Mays argues that he could not have filed a formal grievance on that date because, under the grievance policy, he had to make an attempt to "informally" resolve the problem first. He claims that the only means of doing so was to file a request for interview form, but the grievance policy contains no such requirement. It does mention that some attempt at "informal" resolution must occur, but it does not define what this means, nor does it specifically require the use of a request for interview form. The ordinary meaning of the term "informal resolution" would seem to include any number of steps, including speaking to a staff member in person. However, even if the court were to accept his argument that he had to file a request for interview form before initiating the formal grievance process, he completed that step on June 10, 2020, when the Deputy Warden responded to his request. Mr. Mays could have initiated the formal grievance process as of that date, but the record reflects that he did not do so.

Ms. Jewell-Brabbs argues that he did not file a formal grievance until nearly two months later, on August 10, 2020, the date the grievance was received by the grievance office. By contrast, Mr. Mays argues that he submitted the grievance on June 22, 2020, which is the date listed on the form. This dispute is immaterial, however, because even accepting Mr. Mays's argument, the grievance is still untimely. The record shows that there was no barrier to him filing a grievance as of June 10, 2020; by then he was physically capable and had received the return of his request for interview form. He does not provide any reason to excuse this additional period of delay. He was required to file a grievance "as soon as it was reasonably possible for him to do so," *Hurst*, 634 F.3d at 412, and he has not shown that he complied with this requirement.

Additionally, even if the court were to conclude that Mr. Mays filed a timely grievance, there is no evidence—and he does not argue—that he ever pursued an appeal. Under the grievance policy, an inmate is permitted to appeal whenever he "disagrees with the response" or otherwise concludes that it does not "adequately address[] the matter in the grievance." (ECF 25-2 at 12.) Clearly Mr. Mays disagreed with the grievance response, in which the grievance officer stated that no action was being taken because the grievance was not timely filed. However, he did not file an appeal at either level. The grievance policy specifically provides that an inmate can argue that extenuating circumstances prevented him from filing a grievance on time in an appeal, and that time deadlines may be waived by the Warden. (ECF 25-2 at 13.) But Mr. Mays never pursued this step. He complains that the grievance officer took two months to respond to his grievance, but this did not interfere with the time he had to appeal, because the five-day

6

appeal period did not begin running until he received the grievance response. Additionally, if he felt the grievance response was taking too long, he had a remedy available: If he did not receive a response to his grievance within 20 business days, he could proceed within an appeal "as though the grievance had been denied." (ECF 25-2 at 11-12.) Because it is undisputed that Mr. Mays did not exhaust all available remedies under the grievance policy, he did not comply with 42 U.S.C. § 1997e(a).

For these reasons, the motion for summary judgment (ECF 25) is GRANTED, and judgment is entered in favor of the defendant pursuant to 42 U.S.C. § 1997e(a). The clerk is DIRECTED to close this case.

SO ORDERED.

April 29, 2022                                                *s/ Damon R. Leichty*
                                                              Judge, United States District Court